[Cite as *Hobnob, Inc. v. Ohio Liquor Control Comm.*, 2018-Ohio-3499.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Hobnob, Inc., | : | |
| Appellant-Appellant, | : | No. 17AP-907 |
| | | (C.P.C. No. 17CV-5764) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Liquor Control Commission, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on August 30, 2018

**On brief:** *Mark S. Gutentag*, for appellant. **Argued:** *Mark S. Gutentag.*

**On brief:** *Michael DeWine*, Attorney General, *Anthony J. Garcia*, and *Charles E. Febus*, for appellee. **Argued:** *Anthony J. Garcia.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant, Hobnob, Inc. ("Hobnob"), appeals from a judgment of the Franklin County Court of Common Pleas, affirming an order of appellee, Ohio Liquor Control Commission ("commission"), suspending Hobnob's liquor license for 30 days. For the following reasons, we reverse and remand.

**I. Facts and Procedural History**

{¶ 2} Hobnob, a liquor permit holder, operates a bar, the Shroyer Inn, located on Shroyer Road in Dayton, Ohio. In June 2016, the Ohio Department of Public Safety, Investigative Unit, notified Hobnob of its finding that the bar had violated R.C. 4301.22(B)'s prohibition against either selling or furnishing beer or intoxicating liquor to an intoxicated

person.   In May 2017, the commission held a hearing on the alleged violations.   The following evidence was adduced at that hearing.

{¶ 3}   Enforcement agent Jason Shawver testified regarding his investigation of the events surrounding the February 13, 2016 fatal automobile collision involving Vashti Brown and Devin Bachmann on Interstate 75 in Dayton.[1]  Brown and Bachmann had patronized the Shroyer Inn before they died.   In May 2016, Shawver went to the Shroyer Inn and interviewed Jon Winglewich and Shawna Dunwiddie, the two employees at the bar during the night at issue.

{¶ 4}   Shawver testified that Dunwiddie, the bartender at the Shroyer Inn that night, told him that Brown arrived at the bar at approximately 10:00 p.m., and Bachmann arrived by 11:30 p.m.   Dunwiddie also told Shawver that she had sold and served alcoholic beverages to both Brown and Bachmann that night.   Shawver's investigative report, which the commission admitted into evidence, states in part that Dunwiddie told him that Brown and Bachmann were at the Shroyer Inn for Jasmine Price's birthday, and that everyone in the birthday party group was "taking turns buying shots for each other."  (Stipulated Record E2757 at Z42.)  In his review of all the bar receipts for that night, Shawver obtained receipts showing that Brown only had purchased 3 beers and Bachmann only had purchased 3 mixed alcoholic drinks.   A friend of Brown and Bachmann, James Pitt, purchased 11 drinks that night at the bar.   Dunwiddie told Shawver that, around the time of last call that night, two individuals arrived at the bar to pick up Brown and Bachmann "because they * * * were too drunk to drive."  (Stipulated Record E2757 at Y76.)  The bar closed at 2:30 a.m., and Brown and Bachmann died in the automobile collision at approximately 3:03 a.m.   The autopsy reports of Brown and Bachmann indicated that they both had a blood-alcohol content of 0.252.   Shawver's investigation did not reveal that either Brown or Bachmann had consumed alcohol at any other location on the night at issue.

{¶ 5}   Winglewich, the barback at the Shroyer Inn on that night, testified that he performed miscellaneous duties such as doing the dishes and clearing tables.   He also assisted bartender Dunwiddie, but he did not serve any drinks that night.   Dunwiddie

---

[1] Brown and Bachmann, along with two other vehicle occupants, were killed when their vehicle was struck by another vehicle being driven southbound in the northbound lanes.  All five occupants of the vehicles were intoxicated when they died as a result of the collision.

testified that a total of approximately 50 or 60 people were at the bar that night, but she did not indicate how many of those people were with the group celebrating Price's birthday. According to Dunwiddie, when Brown purchased beers at the bar, she did not exhibit signs of intoxication. Similarly, when Bachmann purchased the three drinks, he did not exhibit signs of intoxication.

{¶ 6} In June 2017, the commission issued its order finding that Hobnob did not violate R.C. 4301.22(B) by selling beer or intoxicating liquor to an intoxicated person, but that Hobnob did violate that statute by furnishing beer or intoxicating liquor to an intoxicated person. Based on the violation finding, the commission suspended Hobnob's liquor permit for 30 days. Hobnob appealed the commission's order to the trial court, which stayed the enforcement of the order pending final determination of Hobnob's appeal. The trial court affirmed the commission's order.

{¶ 7} Hobnob timely appeals to this court.

## II. Assignment of Error

{¶ 8} Hobnob assigns the following error for our review:

> The trial court erred in affirming the decision of the Ohio Liquor Control Commission to suspend appellant's Ohio liquor permit.

## III. Standard of Review

{¶ 9} Pursuant to R.C. 119.12, a common pleas court reviewing an order of an administrative agency must affirm the order if, upon consideration of the entire record, the order is in accordance with law and is supported by reliable, probative, and substantial evidence. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992); *Colon v. Ohio Liquor Control Comm.*, 10th Dist. No. 09AP-325, 2009-Ohio-5550, ¶ 8. To be reliable, the evidence must be dependable, i.e., that there is a reasonable probability that the evidence is true. *Our Place, Inc.* at 571. To be probative, the evidence must tend to prove the issue in question. *Id.* To be substantial, the evidence must have some weight, i.e., it must have importance and value. *Id.*

{¶ 10} "The common pleas court's 'review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character

of the evidence, and the weight thereof." ' " *Colon* at ¶ 8, quoting *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955).  Although the reviewing court must "give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive." *Colon* at ¶ 8, citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980).

{¶ 11} On appeal to an appellate court, the standard of review is more limited.  "In reviewing the court of common pleas' determination that the Commission's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion." *Duncan v. Liquor Control Comm.*, 10th Dist. No. 08AP-242, 2008-Ohio-4358, ¶ 10, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992).  Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal.  *Colon* at ¶ 9, citing *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. Discussion

{¶ 12} In its sole assignment of error, Hobnob asserts the trial court erred in affirming the commission's order suspending its liquor permit for 30 days.  We agree.

{¶ 13} Pursuant to R.C. 4301.25(A), the commission is authorized to suspend or revoke the permit of anyone found to be in violation of any of the applicable restrictions of R.C. Chapters 4301 and 4303 or any lawful commission rule.  As pertinent here, R.C. 4301.22(B) provides that "[n]o permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person."   " '[A]ctual knowledge of intoxication is a prerequisite under R.C. 4301.22(B).' " *Tauring Corp. v. Ohio Liquor Control Comm.*, 10th Dist. No. 14AP-622, 2015-Ohio-1967, ¶ 14, quoting *Lluberes, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP-1326, 2003-Ohio-5943, ¶ 14, citing *Gressman v. McClain*, 40 Ohio St.3d 359, 363 (1988).  "Constructive knowledge will not suffice." *Gressman* at 363.  "Knowledge of a patron's intoxication may be obtained from many sources and in many ways, and is furnished or obtained by a variety of facts and

circumstances." *Id.* In general, "a person has knowledge of an existing condition when his relation to it, his association with it, his control over it, or his direction of it are such as to give him actual personal information concerning it." *Id.*

{¶ 14} "The commission may draw reasonable inferences based on the evidence before it." *Valentino v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP-586, 2003-Ohio-1937, ¶ 20. Thus, either direct or circumstantial evidence may be used to prove a violation of R.C. 4301.22(B). *Lluberes*; *Enitnel, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP-583, 2002-Ohio-7034, ¶ 26; *VFW Post 8586 v. Ohio Liquor Control Comm.*, 83 Ohio St.3d 79, 82 (1998); *Glossip v. Liquor Control Comm.*, 10th Dist. No. 00AP-1074 (July 24, 2001).

{¶ 15} Here, the evidence presented before the commission does not reasonably support a conclusion that Hobnob violated R.C. 4301.22(B). The pertinent facts presented at the commission hearing are undisputed. Both Brown and Bachmann arrived at the Shroyer Inn by 11:30 p.m. on February 12, 2016. During their time at the bar, Brown and Bachmann each purchased three drinks. At the time of those purchases, they did not show signs of intoxication. Consistent with these facts, the commission found that Hobnob did not sell beer or intoxicating liquor to an intoxicated person. However, even though neither Brown nor Bachmann appeared intoxicated when they purchased drinks at the bar, they both were intoxicated when they departed the bar at approximately 2:00 a.m., soon before they were killed in an automobile collision at approximately 3:03 a.m. Their blood-alcohol contents at the time of their deaths were both 0.252. Based on these undisputed facts, it reasonably can be inferred that, during their time at the bar, Brown and Bachmann ingested a sufficient number of drinks to make them heavily intoxicated.

{¶ 16} The commission argues the circumstantial evidence also shows that Hobnob furnished alcohol to Brown and/or Bachmann when they were intoxicated. We are unpersuaded. While there is evidence that "the people in the birthday party [were] buying drinks for each other," and that Pitt purchased 11 drinks that night, neither this evidence, nor any other evidence in the record, supports an inference that the bartender knew that drinks were being distributed to Brown and Bachmann after they became intoxicated. (Stipulated Record E2757 at Y94.)

{¶ 17} Based on our review of the record, we find the evidence before the commission was insufficient to support its finding that Hobnob furnished beer or intoxicating liquor to an intoxicated person in violation of R.C. 4301.22(B). Therefore, we conclude the trial court erred in affirming the commission's order. Accordingly, we sustain Hobnob's sole assignment of error.

## V. Disposition

{¶ 18} Having sustained Hobnob's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded.*

BROWN, P.J., concurs.
TYACK, J., dissents.

TYACK, J., dissenting.

{¶ 19} I simply cannot agree that the trial court abused its discretion in affirming the finding of the Ohio Liquor Control Commission ("commission") in this case. I therefore dissent.

{¶ 20} Vashti Brown and Devin Bachmann both died shortly after leaving the Shroyer Inn. Each had a blood alcohol level content of 0.252. Each had the equivalent of over 12 drinks still in their system, all of them obtained at the Shroyer Inn.

{¶ 21} The staff at the bar all knew it was illegal to sell drinks to an intoxicated person, so each claimed they did not know Brown and Bachmann were intoxicated, although Brown and Bachmann each had consumed over a dozen drinks. The claim in the majority opinion that Brown and Bachmann did not show signs of intoxication is simply incredible. The commission and the common pleas court were well within their discretion to find that a person with that much alcohol in his or her system has to show noticeable signs of intoxication. For us, as an appellate court, to state that it is an "undisputed fact" that Brown and Bachmann did not show signs of intoxication when they were provided drinks evinces a willingness to utterly disregard the actual findings before the commission as affirmed by the trial court.

{¶ 22} The factual findings below were based on sound scientific evidence about the effects on the human body of consuming huge amounts of alcohol. The assertions in the majority opinion are based on claims by staff at the Shroyer Inn who had every reason to lie in order to protect themselves and their employer from civil and potentially criminal liability.

{¶ 23} The commission and the common pleas court got it right. We should affirm.

---